*"The problems in the mortgage market are routinely referred to as a "foreclosure crisis" because the level of defaults and foreclosures greatly exceed previous peak levels in the post-war era and, as a result, have drawn comparisons to the levels of distress experienced in the Great Depression"*

*"This interim report contains a review of the academic literature and industry press on the root causes of the current foreclosure crisis and a plan for further discussion of policy responses to the crisis".*

78. "The problems in the mortgage market are routinely referred to as a "foreclosure crisis" because the level of defaults and foreclosures greatly exceed Both BANK OF AMERICA N.A. and RECONTRUST COMPANY knew that the requirements of § 2923.5 and § 2924 needed to be followed.

79. In a rush to foreclose on thousands of homes they neglected their duties by filing documents that were inaccurate to allow the non-judicial process to initiate, and they did not care that damages they caused.

80. The intent of the legislature when passing and forming California Civil code §2923.5 was clear. Protect homeowners and slow foreclosures.

81. As a direct and proximate result of the negligence per se of the lender, agents/servicers Defendants, and each of him, the Plaintiffs has suffered monetary damages, emotional stress, and the indirect costs in an amount currently incalculable, but according to proof at trial together with such other and further relief as the Court may deem reasonable and just under the circumstances..

Bus. & Pro. Code § 17200 et. seq.

The court shall impose a civil penalty for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant

circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

82.    Both BANK OF AMERICA N.A. and RECONTRUST COMPANY knew that the requirements of § 2923.5 and § 2924 needed to be followed.

83.    In a rush to foreclose on thousands of homes they neglected their duties by filing documents that were inaccurate to allow the non-judicial process to initiate, and they did not care that damages they caused.

84.    The intent of the legislature when passing and forming California Civil code §2923.5 was clear. Protect homeowners and slow foreclosures.

85.    As a direct and proximate result of the negligence per se of the lender, agents/servicers Defendants, and each of him, the Plaintiffs has suffered

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against the Defendants and each of them, jointly and severally, as follows:

1.    Rescission of the Golden State Funding loan;

2.    Statutory damages for the disclosure violations;

3.    For a declaration of the rights and duties of the parties, specifically that the foreclosure of Plaintiff's residence was wrongful.

4.    For compensatory, special, general and punitive damages according to proof against all Defendants.

5.    For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

PLAINTIFFS COMPLAINT FOR (1) FRAUD; (2) VIOLATIONS OF TRUTH IN LENDING ACT; (3) VIOLATIONS IN REAL ESTATE SETTLEMENT PROCEDURES ACT; (4) VIOLATIONS OF CALIFORNIA CIVIL CODE SECTIONS 2923.5 and 2924

62

6.      For reasonable costs of suit and such other and further relief as the Court deems proper.


Dated: 3-6-2012

RAHILA KHAN
40224 Blancher Street
Fremont, CA 94538
Tel: (510) 999-7991
Fax: (510) 999-7991

Plaintiff In Pro Per


## VERIFICATION

I, RAHILA KHAN, am a Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Fremont, California.


Dated: 3-6-2012                    By: 

RAHILA KHAN

# EXHIBIT A

**Grant Deed recorded on 9/18/06.**



**RECORDING REQUESTED BY**

Alliance Title Company

**AND WHEN RECORDED MAIL TO**

Name    Rahila Khan
Street Address    39959 Michelle Street

City,State Zip    Fremont , Ca., 94583

Order No. 11484274-564-AV

APN No: 525-0835-029

2006351806    09/18/2006 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    11.00
COUNTY TAX:    632.50

2   PGS

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
City of Fremont
Conveyance Tax is $0.00
Parcel No. 525-0835-029

Documentary Transfer Tax is $632.50

☑ computed on full value of interest or property conveyed, or
☐ full value less value of liens or encumbrances remaining at the time of sale

*The Undersigned*
, Declarant or Agent Determining Tax

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Antonio B. Garcia and Elvira P. Garcia, as Trustees of the Garcia Family Trust, U.D.T., dated April 24, 2005

hereby GRANT(s) to

Rahila Khan, a married woman as her sole and separate property

the following real property in the city of Fremont

county of Alameda, state of California:

All that certain real property in the City of Fremont, County of Alameda, State of California, described as follows:

Lot 26, Block 1, Tract 1912, filed August 20, 1958 in Book 38 of Maps at Page 97, Alameda County Records.
*The Garcia Family Trust*

Dated: September 5, 2006

STATE OF CALIFORNIA
COUNTY OF ~~Alameda~~ **SAN MATEO**   }  S.S.

On *September 6, 2006* before me,

**FLORANTE G. SULIT**

a Notary Public, personally appeared
*Antonio B. Garcia and Elvira P. Garcia*

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in ~~his/her/their~~ authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

*Antonio B. Garcia, TRUSTEES*
Antonio B. Garcia, Trustees

*Elvira P. Garcia, TRUSTEES*
Elvira P. Garcia, Trustees

FLORANTE G. SULIT
Commission # 1588007
Notary Public - California
San Mateo County
My Comm. Expires Jun 17, 2009

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON THE FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

Name        Street Address        City & State

11484274 -564 -AV

**Exhibit A**
**Legal Description**

All that certain real property in the City of Fremont, County of Alameda, State of California, described as follows:

Lot 26, Block 1, Tract 1912, filed August 20, 1958 in Book 38 of Maps at Page 97, Alameda County Records.

APN No: 525-0835-029

# EXHIBIT B

**Interspousal Transfer Deed recorded on 9/18/06.**



**RECORDING REQUESTED BY**
Alliance Title Company
**AND WHEN RECORDED MAIL TO**



2006351805      09/18/2006 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:      11.00

Name      Rahila Khan
Street
Address   39959 Michelle Street

City,State
Zip       Femont, Ca., 94583

Order No.  11484274-564-AV

2   PGS

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN No: 525-0835-029

## INTERSPOUSAL TRANSFER DEED

**Individual Grant Deed** (Excluded from Reappraisal Under Proposition 13)
THE UNDERSIGNED GRANTOR(s) DECLARE(s)
Documentary Transfer Tax is $ -0-          THERE IS NO CONSIDERATION FOR THIS TRANSFER. *The Undersigned*
Declarant or Agent Determining Tax

Parcel No. 525-0835-029

This is an INTERSPOUSAL TRANSFER under Sec. 63 of the Revenue and Taxation Code. Grantee(s) has (have) checked the applicable exclusion:

- (☐) From joint tenancy to community property
- (☐) From joint tenancy to tenancy in common
- (☐) From one spouse to both spouses      (see below)
- (☐) From one spouse to the other spouse      (see below)
- (☐) To relinquish any community interest and to vest said property in the name of the grantee as his/her sole and separate property
- (☐ ) Other _____

*GIFT*

GRANTOR(S):
Abrar Kahn, spouse of the grantee
hereby GRANT(S) to
**Rahila Khan, a married woman as her sole and separate property**
the following real property in the City of Fremont
County of Alameda, State of California:

**See Exhibit A attached hereto and made a part hereof.**

Dated: September 5, 2006
STATE OF CALIFORNIA
COUNTY OF Alameda

S.S. Abrar Kahn

On  September 5, 2006      before me,
KIMBERLY HAGIN
a Notary Public, personally appeared

Abrar Kahn

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature  KIMBERLY HAGIN

KIMBERLY HAGIN
Comm. # 1679800
NOTARY PUBLIC · CALIFORNIA
Santa Clara County
My Comm. Expires July 6, 2010

(This area for official notorial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON THE FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

Name                    Street Address                    City & State

Inspdeed.doc (rev. 07/17/98)

11484274 -564 -AV

**Exhibit A**
**Legal Description**

All that certain real property in the City of Fremont, County of Alameda, State of California, described as follows:

Lot 26, Block 1, Tract 1912, filed August 20, 1958 in Book 38 of Maps at Page 97, Alameda County Records.

APN No: 525-0835-029

# EXHIBIT C

**First Promissory Note executed by plaintiff on or about 9/5/06.**

# EXHIBIT D

**First Deed of Trust recorded on 9/18/06.**

*Alliance Title*
*Escrow # 11 484274- 564 AV*

Recording Requested By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
Return To:
**Accredited Home Lenders, Inc.**
**Attn: Post Closing Dept.**
**16550 West Bernardo Dr. Bldg 1**
**San Diego, CA 92127-1870**



2006351807    09/18/2006 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    67.00

   20  PGS

**RECORDING REQUESTED BY:**
**ALLIANCE TITLE COMPANY**

Prepared By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
**15090 Avenue of Science**
**San Diego, CA 92128**

*AD2*
*20*
*L*

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

MIN **100176106081079536**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **September 1, 2006**
together with all Riders to this document.

**(B) "Borrower"** is **RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

Borrower's address is 4140 **IRVINGTON AVENUE**
**FREMONT, CA 94538**                          . Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **Accredited Home Lenders, Inc.**
                        **A California Corporation**

Lender is a **Corporation**
organized and existing under the laws of **the State of California**

0608107953

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3005  1/01

**-6A(CA)** (0207)
Page 1 of 15          Initials: *RK*

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
**(D) "Trustee"** is ALLIANCE TITLE

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated September 1, 2006
The Note states that Borrower owes Lender four hundred sixty thousand and 00/100
Dollars
(U.S. $460,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2036

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: R|C

0608107953

-6A(CA) (0207)                Page 2 of 15                Form 3005  1/01

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
    County        of        **ALAMEDA**        :
   [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
**See Legal Description Addendum Page Attached**

Parcel ID Number: **525-0835-029**
**39959 MICHELLE STREET**
                      which currently has the address of
                                          [Street]
**FREMONT**            [City], California **94538**   [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

                                        Initials: *R.K*    **0608107953**

-6A(CA) (0207)             Page 3 of 15                    Form 3005 1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _RJC_

0608107953

-6A(CA) (0207)                         Page 4 of 15                         Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0608107953

Initials: _P_ _C_

-6A(CA) (0207)                          Page 6 of 15                          Form 3005   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0608107953

Initials: RK

-6A(CA) (0207)            Page 8 of 15            Form 3005  1/01

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: RR

0608107953

Form 3005  1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _RK_

0608107953

Form 3005   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: RK

0608107953

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: RK     0608107953

VMP®-6A(CA) (0207)     Page 13 of 15     Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                 RAHILA KAHN          -Borrower


_____        _____ (Seal)
                                                     -Borrower


_____ (Seal) _____ (Seal)
             -Borrower                                -Borrower


_____ (Seal) _____ (Seal)
             -Borrower                                -Borrower


_____ (Seal) _____ (Seal)
             -Borrower                                -Borrower

State of California
County of ALAMEDA                                }  ss.

On SEPTEMBER 5, 2006   before me, KIMBERLY HAGIN → notary public

personally appeared

RAHILA KAHN

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

KIMBERLY HAGIN
Comm. # 1679800
NOTARY PUBLIC - CALIFORNIA
Santa Clara County
My Comm. Expires July 8, 2010

Initials: RK

0608107953

-6A(CA) (0207)                    Page 15 of 15                    Form 3005  1/01

## LEGAL DESCRIPTION ADDENDUM

| Borrower Name(s): | Lender: |
|---|---|
| RAHILA KAHN | Accredited Home Lenders, Inc.<br>A California Corporation<br>15090 Avenue of Science<br>San Diego, CA 92128 |
| | **Loan #: 0608107953** |

**Property Address:**
39959 MICHELLE STREET
FREMONT, CA 94538

**Legal Description:**
**LOT 26, BLOCK 1, TRACT 1912, FILED AUGUST 20, 1958 IN BOOK 38 OF MAPS AT PAGE 97, ALAMEDA COUNTY RECORDS.**

Initials _R K_

MIN # 100176106081079536                KAHN                    Loan #    0608107953
AHL 610101.UFF                       Page 1 of 1

11484274 -564 -AV

**Exhibit A**
**Legal Description**

All that certain real property in the City of Fremont, County of Alameda, State of California, described as follows:

Lot 26, Block 1, Tract 1912, filed August 20, 1958 in Book 38 of Maps at Page 97, Alameda County Records.

APN No: 525-0835-029

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **1st day of September , 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's  Adjustable Rate Note (the "Note") to **Accredited Home Lenders, Inc., A California Corporation** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**39959 MICHELLE STREET**
**FREMONT, CA 94538**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **8.400%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the **1st day of October, 2008** and on the **1st day of every sixth** month thereafter.  Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five And Four Tenth(s)** percentage points (**5.400%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.900%** or less than **8.400%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage points ( **1.500%**) from the rate of interest I have been paying for the preceding six months.  My interest rate will never be greater than **15.400%** or less than **8.400%**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____  9/5/06
Borrower                         Date
**RAHILA KAHN**

_____       _____
Borrower                  Date        Borrower                  Date

_____       _____
Borrower                  Date        Borrower                  Date

_____       _____
Borrower                  Date        Borrower                  Date

_____       _____
Borrower                  Date        Borrower                  Date

MIN #  100176106081079536        KAHN              Loan #    0608107953
ARMRIDR3.UFF                    Page 3 of 3         AHL modified FannieMae 3138 (1/01)

# EXHIBIT E

**Second Promissory Note executed by plaintiff on or about 9/5/06.**

## NOTE

| September 1, 2006 | FREMONT | CA |
|---|---|---|
| *Date* | *City* | *State* |

**39959 MICHELLE STREET**
**FREMONT, CA 94538**
*Property Address*

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **115,000.00**                (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is **Accredited Home Lenders, Inc.**

**A California Corporation**

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2. INTEREST**

I will pay interest at a yearly rate of                **11.650 %.**

Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3. PAYMENTS**

I will pay principal and interest by making payments each month of U.S. $ **1,152.02**

I will make my payments on the **1st**        day of each month beginning on **November 1**                ,
**2006**        . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on **October 1, 2021**

I still owe amounts under this Note, I will pay all those amounts, in full, on that date. **- See Balloon Rider attached hereto.**

I will make my monthly payments at **P.O. Box 502480 San Diego, CA  92150-2480**

or at a different place if required by the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of  **10**  calendar days after the date it is due, I will promptly pay a late charge to the Note Holder. The amount of the charge will be  **6.000 %** of my overdue payment, but not less than U.S. **$1.00**                and not more than U.S. **$69.12**                . I will pay this late charge only once on any late payment.

**(B) Notice from Note Holder**

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

**(C) Default**

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows: **- See Deed of Trust**

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."  **- See Prepayment Charge Rider attached hereto.**

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

## NOTICE TO BORROWER
### Do not sign this Note if it contains blank spaces.
### All spaces should be completed before you sign.


_____ (Seal)
                          -Borrower

RAHILA KAHN


_____ (Seal)
                          -Borrower


_____ (Seal)
                          -Borrower


_____ (Seal)
                          -Borrower


_____ (Seal)
                          -Borrower


_____ (Seal)
                          -Borrower


_____ (Seal)
                          -Borrower


_____ (Seal)
                          -Borrower


*(Sign Original Only)*

**NOTICE TO BORROWER:   IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT.   IN THAT CASE,   YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES, AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN.   IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.**

## BALLOON RIDER TO NOTE

THIS BALLOON RIDER is made this 1st day of **September , 2006**  and is                    , incorporated into and shall be deemed to amend and supplement the Note of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Accredited Home Lenders, Inc., A California Corporation** (the "Lender") of the same date and covering the property described in the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and located at:

**39959 MICHELLE STREET
FREMONT, CA 94538**

[Property Address]

This loan is payable in full at the end of     15     year(s).  You must repay the entire principal balance of the loan and the unpaid interest then due. The lender is under no obligation to refinance the loan at that time.  You will therefore be required to make payment out of other assets you may own, or you will have to find a lender willing to lend you the money at prevailing market rates, which may be considerably higher or lower than the interest rate on this loan.  If you refinance this loan at maturity, you may have to pay some or all closing costs normally associated with a new loan, even if you obtain refinancing from the same lender.

Witness The Hand(s) and Seal(s) Of The Undersigned

_____ (Seal)          _____ (Seal)
RAHILA KAHN                 Borrower                                  Borrower


_____ (Seal)          _____ (Seal)
                            Borrower                                  Borrower


_____ (Seal)          _____ (Seal)
                            Borrower                                  Borrower


_____ (Seal)          _____ (Seal)
                            Borrower                                  Borrower


KAHN                                MIN# 100176106081079544                    0608107954
4301.uff

# PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 1st day of September, 2006, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Accredited Home Lenders, Inc., A California Corporation.

## NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT.  THIS PREPAYMENT CHARGE RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.

**PREPAYMENT CHARGE**
I/we may make a full prepayment or partial prepayments.  However, if the aggregate amount of the prepayment(s) made during any twelve (12) month period within Twenty-four(24) months of the date of the Note exceeds twenty percent (20%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s),  I/we agree to pay the holder of the Note a sum equal to six (6) months' interest on the amount by which such prepayment(s) exceed twenty percent (20%) of the original principal amount of the Note.  Any prepayments made after said initial Twenty-four (24) month period shall not be subject to any prepayment charge.

I/we confirm that, prior to the closing of this mortgage loan, I/we were offered the option of obtaining a mortgage loan that did not require payment of a prepayment charge and that I/we are agreeing to this prepayment charge in exchange for a monetary benefit, including but not limited to a rate or fee reduction.

_____     _____
Borrower                        Date        Borrower                        Date
**RAHILA KAHN**

_____     _____
Borrower                        Date        Borrower                        Date

_____     _____
Borrower                        Date        Borrower                        Date

_____     _____
Borrower                        Date        Borrower                        Date

Standard - 5 yrs
CA 1st & 2nd - 5 yrs
KS 1st & 2nd - 5 yrs
MIN # 100176106081079544              KAHN                    Loan #   0608107954

AHL PPR-STD.UFF                        Page 1 of 1

# EXHIBIT F

**Second Deed of Trust recorded on 9/18/06.**

*Alliance Title*
*Escrow # 1189274-564 AV*

Recording Requested By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
Return To:
**Accredited Home Lenders, Inc.**
**Attn: Post Closing Dept.**
**16550 West Bernardo Dr. Bldg 1**
**San Diego, CA 92127-1870**

2006351808   09/18/2006 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:          34.00

9   PGS

**RECORDING REQUESTED BY:**
**ALLIANCE TITLE COMPANY**

Prepared By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
**15090 Avenue of Science**
**San Diego, CA 92128**

---

# DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

MIN 100176106081079544

THIS DEED OF TRUST is made this **1st**     day of **September, 2006**    , among the Trustor,
**RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

whose address is **4140 IRVINGTON AVENUE**
**FREMONT, CA 94538**        (herein "Borrower"),
**ALLIANCE TITLE**
       (herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Accredited Home Lenders, Inc.**

**A California Corporation**
       ("Lender") is organized and
       , and has an address of
existing under the laws of **the State of California**
**15090 Avenue of Science San Diego, CA 92128**
     BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in the County of **ALAMEDA**
       , State of California:
**See Legal Description Addendum Page Attached**

Parcel ID Number: **525-0835-029**        which has the address of
**39959 MICHELLE STREET**           [Street]
**FREMONT**      [City], California **94538**    [ZIP Code] (herein "Property Address");
       0608107954

**CALIFORNIA** - SECOND MORTGAGE - 1/80 - FNMA/FHLMC **UNIFORM INSTRUMENT WITH MERS**

(VMP)**-76N(CA)** (0510)
Page 1 of 7
Form 3805
Amended 9/99
Initials: **RK**

VMP Mortgage Solutions, Inc. (800)521-7291

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **September 1, 2006** and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $**115,000.00** , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **October 1, 2021** ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

0608107954

Initials: _RK_

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict

0608107954

Initials: _RK_



shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees;

0608107954

Initials: _____

Form 3805



and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

2

**REQUEST FOR NOTICE OF DEFAULT**

Test ——————————————— **AND FORECLOSURE UNDER SUPERIOR** ———————————————

**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____ , in Book _____ , Page _____ , records of _____ County, or filed for record with recorder's serial number _____ , County, California, executed by **RAHILA KAHN**

as trustor (or mortgagor) in which **Mortgage Electronic Registration Systems, Inc. ("MERS")** is named

as beneficiary (or mortgagee) and **ALLIANCE TITLE** as trustee

be mailed to **Accredited Home Lenders, Inc., A California Corporation**
at **15090 Avenue of Science**
**San Diego, CA 92128**

0608107954

Initials: _RK_

VMP ®-78N(CA) (0510)                     Page 6 of 7                     Form 3805

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)          _____ (Seal)
RAHILA KAHN                              -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                                    -Borrower

*[Sign Original Only]*

**Lender's CFL License #** _____

**VMP**®-76N(CA) (0510)                    Page 6 of 7                    0608107954
                                                                        Form 3805

State of California

County of ALAMEDA

On SEPTEMBER 5, 2006 , before me KIMBERLY HAGIN - notary public

, personally appeared

RAHILA KAHN

, ~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.          KIMBERLY HAGIN

KIMBERLY HAGIN
Comm. # 1679800
NOTARY PUBLIC - CALIFORNIA
Santa Clara County
My Comm. Expires July 6, 2010

0608107954

## LEGAL DESCRIPTION ADDENDUM

| Borrower Name(s):<br>RAHILA KAHN | Lender:<br>Accredited Home Lenders, Inc.<br>A California Corporation<br>15090 Avenue of Science<br>San Diego, CA 92128 |
|---|---|
| | **Loan #:** 0608107954 |

**Property Address:**
39959 MICHELLE STREET
FREMONT, CA 94538

**Legal Description:**
**LOT 26, BLOCK 1, TRACT 1912, FILED AUGUST 20, 1958 IN BOOK 38 OF MAPS AT PAGE 97, ALAMEDA COUNTY RECORDS.**

Initials _RK_

11484274 -564 -AV

**Exhibit A**
**Legal Description**

All that certain real property in the City of Fremont, County of Alameda, State of California, described as follows:

Lot 26, Block 1, Tract 1912, filed August 20, 1958 in Book 38 of Maps at Page 97, Alameda County Records.

APN No: 525-0835-029

# EXHIBIT G

**ASSIGNMENT OF DEED OF TRUST RECORDED ON 6/28/11.**

Recording Requested By:
**Bank of America**
Prepared By:  **Barbara Nord**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID# **2437398914995220**

Property Address:
**39959 Michelle St**
**Fremont, CA 94538-2915**
CA0-ADT 13909997          6/7/2011



**2011183101      06/28/2011 10:50 AM**
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
       RECORDING FEE:      24.00

3    PGS

This space for Recorder's use

MIN #: 100176106081079536          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474** does hereby grant, sell, assign, transfer and convey unto **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF THE MORGAN STANLEY HOME EQUITY LOAN TRUST 2007-2, MORTGAGE PASS THROUGH   CERTIFICATES, SERIES 2007-2** whose address is **9062 OLD ANNAPOLISRD, COLUMBIA, MD 21045** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          **ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION**
Original Borrower(s):     **RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Original Trustee:         **ALLIANCE TITLE**
Date of Deed of Trust:    **9/1/2006**
Original Loan Amount:     **$460,000.00**

Recorded in **Alameda** County, CA on: **9/18/2006**, book N/A, page N/A and instrument number **2006351807**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

060911

                                   **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

                                   By: _____
                                   **Tina LeRaybaud, Assistant Secretary**

State of California
County of Ventura

On _____ before me, Marcellus Ellis, Notary Public, personally appeared Tina LeRaybaud, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Notary Public: Marcellus Ellis                    (Seal)
My Commission Expires: 10/31/2013

*See attached*

# ACKNOWLEDGMENT

State of California
County of _____ Ventura _____ )

On *June 9, 2011* before me, Dee Ann Westfall Cortes, Notary Public
_____ (insert name and title of the officer)

personally appeared *Tina Je Raybaud* _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

DEE ANN WESTFALL CORTES
Commission # 1805013
Notary Public - California
Los Angeles County
My Comm. Expires Jul 1, 2012

Signature *Dean Westfall Cortes* (Seal)

*assignment of Deed of Trust to Rahila Kahn*

# EXHIBIT H

**Notice of Default and Election to Sell Under Deed of Trust
recorded on 9/21/11.**

## LANDSAFE TITLE

**RECORDING REQUESTED BY:**
**WHEN RECORDED MAIL TO:**
**RECONTRUST COMPANY**
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Sheryl Dela Cruz
TS No. 11-0099855
Title Order No. 11-0081134



2011268436   09/21/2011 11:46 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:        27.00

4   PGS

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is **$151,302.53**, as of 09/20/2011 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

see Attached Declaration

TS No.  11-0099855

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

   To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR  THE HOLDERS OF THE MORGAN STANLEY HOME EQUITY LOAN TRUST 2007-2, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-2
C/O Bank of America, N.A.
400 National way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650
   If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 09/01/2006, executed by RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 09/18/2006, as Instrument No. 2006351807 (or Book , Page ) of Official Records in the Office of the County Recorder of Alameda County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 460,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 01/01/2009  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES. IN ADDITION,  THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  10/01/2036 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No.  11-0099855

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured  thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable  and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: September 20, 2011

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

_____

Authorized Signer

ARAYA DHANASOPON

*Form nodorig_2011.3.0_03/2011*

**Bank of America**

**Home Loans**

Notice Date:   September 13, 2011

| 11-0099855 |

Rahila Kahn
40224 Blanchard St
Fremont, CA 94538

**Property Address:**
39959 Michelle Street
Fremont, CA 94538

## CALIFORNIA DECLARATION

I, _Chamkiri Miller_, Mortgage Servicing Specialist II of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America, N.A.

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

_9-13-11 Richardson, TX_
Date and Place

_Chamkiri Miller_
Name of Signor

CA-DECLARATIONS  8638/9506  8/27/2008

# EXHIBIT I

**Excerpt of Prospectus Filed Pursuant to Rule 424(b)(5)
dated February 22, 2007**

**SEC Accession No.** 0000914121-07-000899

**Filing Date**

2007-04-02

**Accepted**

2007-04-02 16:01:43

**Documents**

1

**Filing Date Changed**

2007-04-02

Document Format Files

| Seq | Description | Document | Type | Size |
|-----|-------------|----------|------|------|
| 1 | FORM 424B5 | ms8006321-424b5.txt | 424B5 | 1378634 |
| | Complete submission text file | 0000914121-07-000899.txt | | 1380851 |

Mailing Address *1585 BROADWAY2ND FLOORNEW YORK NY 10036*

Business Address *1585 BROADWAY 2ND FLNEW YORK NY 10036 2127614000*

**MORGAN STANLEY ABS CAPITAL I INC (Filer) CIK: 0001030442 (see all company filings)**

IRS No.: **133939229** | State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **424B5** | Act: **33** | File No.: **333-130694** | Film No.: **07738974**
SIC: **6189** Asset-Backed Securities
Assistant Director 5

Mailing Address *1585 BROADWAY2ND FLOORNEW YORK NY 10036*

Business Address *1585 BROADWAY 2ND FLNEW YORK NY 10036 2127614000*

**Morgan Stanley Home Equity Loan Trust 2007-2 (Filer) CIK: 0001393674 (see all company filings)**

State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **424B5** | Act: **33** | File No.: **333-130694-24** | Film No.: **07738975**
SIC: **6189 Asset-Backed Securities**
Assistant Director 5

```
<DOCUMENT>
<TYPE>424B5
<SEQUENCE>1
<FILENAME>ms8006321-424b5.txt
<DESCRIPTION>FORM 424B5
<TEXT>
```

Filed Pursuant to Rule 424(b)(5)
File No.: 333-130694-24
File No.: 333-130694

PROSPECTUS SUPPLEMENT
(To Prospectus dated February 22, 2007)

$846,247,000
Mortgage Pass-Through Certificates, Series 2007-2
Morgan Stanley Home Equity Loan Trust 2007-2
Issuing Entity
Morgan Stanley ABS Capital I Inc.
Depositor
Morgan Stanley Mortgage Capital Inc.
Sponsor
Wells Fargo Bank, National Association
Master Servicer, Securities Administrator and Servicer
Saxon Mortgage Services, Inc.
Servicer
Countrywide Home Loans Servicing LP
Servicer

The following classes of certificates are being offered pursuant to this
prospectus supplement and the accompanying prospectus:

| Class | Original Class Certificate Balance | Pass-Through Rate |
|-------|-----------------------------------|-------------------|
| Class A-1 | $344,180,000 | Variable |
| Class A-2 | $105,880,000 | Variable |
| Class A-3 | $146,430,000 | Variable |
| Class A-4 | $ 90,890,000 | Variable |
| Class M-1 | $ 31,507,000 | Variable |
| Class M-2 | $ 28,844,000 | Variable |
| Class M-3 | $ 18,194,000 | Variable |
| Class M-4 | $ 15,088,000 | Variable |
| Class M-5 | $ 15,088,000 | Variable |
| Class M-6 | $ 13,757,000 | Variable |
| Class B-1 | $ 13,313,000 | Variable |
| Class B-2 | $ 11,982,000 | Variable |
| Class B-3 | $ 11,094,000 | Variable |

You should read the section entitled "Risk Factors" starting on page S-14 of
this prospectus supplement and page 7 of the accompanying prospectus and
consider these factors before making a decision to invest in the certificates.

The certificates represent interests in the issuing entity only and are not
interests in or obligations of any other person.

Neither the certificates nor the underlying mortgage loans will be insured or guaranteed by any governmental agency or instrumentality.

Assets of the Issuing Entity --

o       The issuing entity is a trust whose assets consist primarily of fixed- and adjustable-rate, first-lien and second-lien mortgage loans secured by residential real properties.

The certificates --

o       The certificates represent beneficial interests in the assets of the issuing entity, as described in this prospectus supplement; and

o       The certificates will accrue interest at a rate equal to one-month LIBOR plus a related fixed margin, subject to certain caps, as described in this prospectus supplement under "Summary--Pass-Through Rates."

Credit enhancement --

o       Subordination as described in this prospectus supplement under "Description of the Certificates--Priority of Distributions Among Certificates,"

o       Overcollateralization as described in this prospectus supplement under "Description of the Certificates--Overcollateralization Provisions," and

o       Excess interest as described in this prospectus supplement under "Description of the Certificates--Overcollateralization Provisions."

Interest Rate Support --

o       An interest rate swap agreement and an interest rate cap agreement with Morgan Stanley Capital Services Inc., as interest rate swap provider and interest rate cap provider, respectively, for the benefit of the certificates as described in this prospectus supplement under "Description of the Certificates--Interest Rate Swap Agreement" and "--Interest Rate Cap Agreement."

THE SECURITIES AND EXCHANGE COMMISSION AND STATE SECURITIES REGULATORS HAVE NOT APPROVED OR DISAPPROVED OF THE OFFERED CERTIFICATES OR DETERMINED IF THIS PROSPECTUS SUPPLEMENT OR THE ACCOMPANYING PROSPECTUS ARE TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

Morgan Stanley ABS Capital I Inc. will not list the certificates on any securities exchanges or on any automated quotation system of any securities association.

Each class of certificates will receive monthly distributions of interest, principal or both, commencing on April 25, 2007. The certificates offered by this prospectus supplement will be purchased by Morgan Stanley & Co. Incorporated and offered from time to time to the public in negotiated transactions or otherwise at varying prices to be determined at the time of sale. Proceeds to the depositor from the sale of the offered certificates are anticipated to be approximately $843,708,259 before the deduction of expenses payable by the depositor, estimated to be approximately $800,000. The offered certificates will be available for delivery to investors in book entry form through the facilities of The Depository Trust Company, Clearstream Banking, societe anonyme and Euroclear Bank, as operator of the Euroclear System, on or about April 3, 2007.

MORGAN STANLEY

April 2, 2007

<PAGE>

TABLE OF CONTENTS

IMPORTANT NOTICE ABOUT THE INFORMATION PRESENTED IN THIS
    PROSPECTUS SUPPLEMENT AND THE ACCOMPANYING PROSPECTUS....................S-4
EUROPEAN ECONOMIC AREA.........................................................S-5
UNITED KINGDOM.................................................................S-5
NOTICE TO UNITED KINGDOM INVESTORS.............................................S-5
SUMMARY........................................................................S-6
    The Offered Certificates...................................................S-7
RISK FACTORS..................................................................S-15
THE MORTGAGE LOAN POOL........................................................S-27
    General...................................................................S-27
    Prepayment Premiums.......................................................S-28
    Adjustable-Rate Mortgage Loans............................................S-28
    The Indices...............................................................S-29
    Underwriting Guidelines...................................................S-29
    The Mortgage Loans........................................................S-42
    Credit Scores.............................................................S-43
THE SPONSOR...................................................................S-44
STATIC POOL INFORMATION.......................................................S-45
THE DEPOSITOR.................................................................S-45
THE ISSUING ENTITY............................................................S-46
THE SERVICERS.................................................................S-46
    General...................................................................S-46
    Saxon Mortgage Services, Inc..............................................S-46
    Countrywide Home Loans Servicing LP.......................................S-49
THE MASTER SERVICER...........................................................S-52
THE SECURITIES ADMINISTRATOR..................................................S-52
THE TRUSTEE...................................................................S-53
INTEREST RATE SWAP PROVIDER AND THE INTEREST RATE CAP PROVIDER.................S-54
DESCRIPTION OF THE CERTIFICATES...............................................S-54
    General...................................................................S-54
    Book-Entry Registration...................................................S-55
    Definitive Certificates...................................................S-58
    Assignment of the Mortgage Loans..........................................S-58
    Delivery of Mortgage Loan Documents.......................................S-59
    Representations and Warranties Relating to the Mortgage Loans.............S-60
    Payments on the Mortgage Loans............................................S-64
    Distributions.............................................................S-65
    Administration Fees.......................................................S-66
    Priority of Distributions Among Certificates..............................S-66
    Distributions of Interest and Principal...................................S-67
    Allocation of Principal Payments to Class A Certificates..................S-71
    Swap Account..............................................................S-71
    Calculation of One-Month LIBOR............................................S-73
    Excess Reserve Fund Account...............................................S-73
    Interest Rate Swap Agreement..............................................S-74
    Interest Rate Cap Agreement...............................................S-76
    Overcollateralization Provisions..........................................S-77
    Reports to Certificateholders.............................................S-78
THE POOLING AND SERVICING AGREEMENT...........................................S-79
    General...................................................................S-79
    Subservicers..............................................................S-80
    Servicing and Trustee Fees and Other Compensation and Payment
        of Expenses...........................................................S-80
    Compensation of the Master Servicer and the Securities
        Administrator.........................................................S-80
    P&I Advances and Servicing Advances.......................................S-81
    Prepayment Interest Shortfalls............................................S-82

Servicer Reports..................................................S-82
Collection and Other Servicing Procedures.........................S-83
Hazard Insurance..................................................S-84
Realization Upon Defaulted Mortgage Loans.........................S-85
Optional Purchase of Delinquent Mortgage Loans....................S-85
Removal and Resignation of a Servicer.............................S-85
Master Servicer Indemnification and Third Party Claims............S-87
Limitation on Liability of the Master Servicer....................S-87
Master Servicer Events of Default; Waiver; Termination............S-88
Eligibility Requirements for Trustee and Securities
    Administrator; Resignation and Removal of Trustee.............S-89
Termination; Optional Clean-up Call...............................S-90
Certain Matters Regarding the Depositor, the Servicers, the
    Securities Administrator and the Trustee......................S-91
Amendment.........................................................S-92
PREPAYMENT AND YIELD CONSIDERATIONS...............................S-93
Structuring Assumptions...........................................S-93
Defaults.........................................................S-100
Prepayment Considerations and Risks..............................S-100
Overcollateralization Provisions.................................S-101
Subordinated Certificates........................................S-102
Effect on Yields Due to Rapid Prepayments........................S-102
Weighted Average Lives of the Offered Certificates...............S-103
Decrement Tables.................................................S-103
Hypothetical Available Funds and Supplemental Interest Rate
    Cap Table....................................................S-111
Final Scheduled Distribution Date................................S-116
FEDERAL INCOME TAX CONSIDERATIONS................................S-116
General..........................................................S-116
Taxation of Regular Interests....................................S-116
Status of the Offered Certificates...............................S-117
The Basis Risk Contract Component................................S-117
Withholding and Backup Withholding...............................S-119
STATE AND LOCAL TAXES............................................S-119
ERISA CONSIDERATIONS.............................................S-119
LEGAL INVESTMENT.................................................S-121
PLAN OF DISTRIBUTION.............................................S-122
LEGAL MATTERS....................................................S-122
REPORTS TO CERTIFICATEHOLDERS....................................S-123

S-2

<PAGE>

RATINGS..........................................................S-124
GLOSSARY.........................................................S-125
ANNEX I - CERTAIN U.S. FEDERAL INCOME TAX DOCUMENTATION
    REQUIREMENTS...................................................I-1
ANNEX II -INTEREST RATE SWAP SCHEDULE.............................II-1
ANNEX III - INTEREST RATE CAP SCHEDULE...........................III-1
ANNEXI IV - MORTGAGE LOAN TABLES..................................IV-1

S-3

<PAGE>

IMPORTANT NOTICE ABOUT THE INFORMATION PRESENTED IN THIS
PROSPECTUS SUPPLEMENT AND THE ACCOMPANYING PROSPECTUS

    We provide information to you about the certificates in two separate
documents that provide more detail in progression: (1) the accompanying
prospectus, which provides general information, some of which may not apply
directly to your series of certificates, and (2) this prospectus supplement,
which describes the specific terms of your series of certificates. If the

accompanying prospectus contemplates multiple options, you should rely on the information in this prospectus supplement as to the applicable option.

You should rely only on the information contained or incorporated by reference in this prospectus supplement and the accompanying prospectus. We have not authorized anyone to provide you with different information.

We are not offering the Morgan Stanley Home Equity Loan Trust 2007-2 Mortgage Pass-Through Certificates, Series 2007-2 in any state or other jurisdiction where the offer is not permitted.

For 90 days following the date of this prospectus supplement, all dealers selling certificates will deliver a prospectus supplement and prospectus. This requirement is in addition to the dealers' obligation to deliver a prospectus when acting as underwriters of the certificates with respect to their unsold allotments or subscriptions.

We cannot sell the certificates to you unless you have been given the opportunity to receive both this prospectus supplement and the accompanying prospectus.

We include cross-references in this prospectus supplement and the accompanying prospectus to captions in these materials where you can find further information concerning a particular topic. The table of contents in this prospectus supplement and the table of contents in the prospectus provide the pages on which these captions are located.

Some of the terms used in this prospectus supplement are capitalized. These capitalized terms have specified definitions, which are included at the end of this prospectus supplement under the heading "Glossary."

In this prospectus supplement, the terms "depositor," "we," "us" and "our" refer to Morgan Stanley ABS Capital I Inc.

All annexes and schedules to this prospectus supplement are a part of this prospectus supplement.

Morgan Stanley ABS Capital I Inc.'s principal offices are located at 1585 Broadway, New York, New York 10036, and its phone number is (212) 761-4000.

S-4

<PAGE>

EUROPEAN ECONOMIC AREA

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a "Relevant Member State"), the underwriter has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the "Relevant Implementation Date") it has not made and will not make an offer of certificates to the public in that Relevant Member State prior to the publication of a prospectus in relation to the certificates which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of certificates to the public in that Relevant Member State at any time:

(a) to legal entities which are authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities;

(b) to any legal entity which has two or more of (1) an average of at least 250 employees during the last financial year; (2) a total balance sheet of more than (euro)43,000,000; and (3) an annual net turnover of more than (euro)50,000,000, as shown in its last annual or consolidated accounts; or

(c) in any other circumstances which do not require the publication by the issuer of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of certificates to the public" in relation to any certificates in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the certificates to be offered so as to enable an investor to decide to purchase or subscribe the certificates, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State and the expression "Prospectus Directive" means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

UNITED KINGDOM

The underwriter has represented and agreed that:

(a) it is a person whose ordinary activities involve it in acquiring, holding, managing or disposing of investments (as principal or agent) for the purposes of its business and (ii) it has not offered or sold and will not offer or sell the offered certificates other than to persons whose ordinary activities involve them in acquiring, holding, managing or disposing of investments (as principal or agent) for the purposes of their businesses or who it is reasonable to expect will acquire, hold, manage or dispose of investments (as principal or agent) for the purposes of their businesses where the issue of the offered certificates would otherwise constitute a contravention of Section 19 of the Financial Services and Markets Act 2000 ("FSMA");

(b) it has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of Section 21 of the FSMA received by it in connection with the issue or sale of the certificates in circumstances in which Section 21(1) of the FSMA does not apply to the issuer; and

(c) it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to the certificates in, from or otherwise involving the United Kingdom.

NOTICE TO UNITED KINGDOM INVESTORS

The distribution of this prospectus supplement if made by a person who is not an authorized person under the FSMA, is being made only to, or directed only at persons who (1) are outside the United Kingdom, or (2) have professional experience in matters relating to investments, or (3) are persons falling within Articles 49(2)(a) through (d) ("high net worth companies, unincorporated associations, etc.") or 19 (Investment Professionals) of the Financial Services and Market Act 2000 (Financial Promotion) Order 2005 (all such persons together being referred to as the "Relevant Persons"). This prospectus supplement must not be acted on or relied on by persons who are not Relevant Persons. Any investment or investment activity to which this prospectus supplement relates, including the offered certificates, is available only to Relevant Persons and will be engaged in only with Relevant Persons.

Potential investors in the United Kingdom are advised that all, or most,

of the protections afforded by the United Kingdom regulatory system will not apply to an investment in the trust fund and that compensation will not be available under the United Kingdom Financial Services Compensation Scheme.

<div align="center">S-5</div>

<PAGE>

<div align="center">SUMMARY</div>

This summary highlights selected information from this prospectus supplement and does not contain all of the information that you need to consider in making your investment decision. You should read this entire prospectus supplement and the accompanying prospectus carefully to understand all of the terms of the offering of the certificates.

The Transaction Parties

Sponsor. Morgan Stanley Mortgage Capital Inc., a New York corporation with its principal executive offices at 1585 Broadway, New York, New York 10036, telephone number (212) 761-4000.

Depositor. Morgan Stanley ABS Capital I Inc., a Delaware corporation with its principal executive offices at 1585 Broadway, New York, New York 10036, telephone number (212) 761-4000.

Issuing Entity. Morgan Stanley Home Equity Loan Trust 2007-2.

Trustee. Deutsche Bank National Trust Company, a national banking association with its corporate trust office at 1761 East St. Andrew Place, Santa Ana, California 92705, Attention: Trust Administration MS07X2, telephone number (714) 247-6000.

Master Servicer and Securities Administrator . Wells Fargo Bank, National Association, a national banking association. The corporate trust office of Wells Fargo Bank, National Association is located (i) for purposes of certificate transfers, at Wells Fargo Center, Sixth Street and Marquette Avenue, Minneapolis, Minnesota 55479 and (ii) for all other purposes including as master servicer, at 9062 Old Annapolis Road, Columbia, Maryland 21045, Attn: MSHEL 2007-2, telephone number (410) 884-2000.

Servicers.

Substantially all of the mortgage loans will be serviced by the following servicers:

o   Saxon Mortgage Services, Inc., a Texas corporation with its principal executive offices at 4708 Mercantile Drive, Forth Worth, Texas, 76137, telephone number (817) 665-7200.

o   Countrywide Home Loans Servicing LP, a Texas limited partnership with its principal executive offices at 7105 Corporate Drive, Plano, Texas 75024, telephone number (972) 526-6285.

Original Loan Sellers.

Substantially all of the mortgage loans were purchased by the sponsor from the following loan sellers:

o   First NLC Financial Services, LLC, a Florida limited liability company with its principal executive offices at 700 West Hillsboro, Building 1, Deerfield Beach, Florida 33441, telephone number (954) 420-0060. First NLC Financial Services, LLC is a wholly owned subsidiary of Friedman, Billings, Ramsey Group, Inc.

o   Wilmington Finance, Inc., a Delaware corporation with its principal
    executive offices at 401 Plymouth Road, Suite 400 Plymouth Meeting,
    Pennsylvania 19462, telephone number (800) 937-6130.

o   Accredited Home Lenders, Inc., a California corporation with its principal
    executive offices at 15253 Avenue of Science, Building 1, San Diego,
    California 92128, telephone number (858) 676-2100.

        Interest Rate Swap Provider and Interest Rate Cap Provider. Morgan Stanley
Capital Services Inc., a Delaware corporation with its principal executive
offices at 1585 Broadway, New York, New York 10036, telephone number (212)
761-4000. Morgan Stanley Capital Services Inc. conducts business in the
over-the-counter derivatives market, engaging in a variety of derivatives
products, including interest rate swaps, currency swaps, credit default swaps
and interest rate options with institutional clients.

                                     S-6
<PAGE>

        The following diagram illustrates the various parties involved in the
transaction and their functions.

```
------------------------------
  Original Loan Sellers
------------------------------
        |
        | Loans
        v
------------------------------                ------------------------------
    Morgan Stanley                              Deutsche Bank National
  Mortgage Capital Inc.          |---------        Trust Company
      (Sponsor)                  |                    (Trustee)
------------------------------   |             ------------------------------
        |                        |
        | Loans                  |             ------------------------------
        v                        |               Wells Fargo Bank
------------------------------   |--------- (Master Servicer, Securities
    Morgan Stanley               |           Administrator and Servicer)
  ABS Capital I Inc.             |             ------------------------------
      (Depositor)                |
------------------------------   |             ------------------------------
        |                        |               Saxon Mortgage
        | Loans                  |---------        Services, Inc.
        v                        |                   (Servicer)
------------------------------   |             ------------------------------
Morgan Stanley Home Equity       |
  Loan Trust 2007-2     ---------|             ------------------------------
   (Issuing Entity)              |               Countrywide Home Loans
------------------------------   |---------        Servicing LP
                                 |                   (Servicer)
                                 |             ------------------------------
                                 |
                                 |             ------------------------------
                                 |               Morgan Stanley
                                 |---------     Capital Services Inc.
                                             (Interest Rate Swap Provider)
                                             and Interest Rate Cap Provider)
                                               ------------------------------
```

The Offered Certificates

        The Morgan Stanley Home Equity Loan Trust 2007-2 will issue the Mortgage

# EXHIBIT J

**Pooling and Servicing Agreement dated March 1, 2007.**

Form 8-K - Current report

SEC Accession No. 0000914121-07-001054

Filing Date
2007-04-18
Accepted
2007-04-18 17:25:50
Documents
3
Period of Report
2007-04-03
Filing Date Changed
2007-04-18

Items

Item 8.01: Other Events
Item 9.01: Financial Statements and Exhibits

Document Format Files

| Seq | Description | Document | Type | Size |
|-----|-------------|----------|------|------|
| 1 | CURRENT REPORT | ms7898562-8k.txt | 8-K | 16938 |
| 2 | UNDERWRITING AGREEMENT | ms7898562-ex1.txt | EX-1 | 55660 |
| 3 | POOLING AND SERVICING AGREEMENT | ms7898562-ex4.txt | EX-4 | 2550702 |
| | Complete submission text file | 0000914121-07-001054.txt | | 2625559 |

Mailing Address 1585 BROADWAY2ND FLOORNEW YORK NY 10036

Business Address 1585 BROADWAY 2ND FLNEW YORK NY 10036 2127614000

Morgan Stanley Home Equity Loan Trust 2007-2 (Filer) CIK: 0001393674 (see all company filings)

State of Incorp.: DE | Fiscal Year End: 1231
Type: 8-K | Act: 34 | File No.: 333-130694-24 | Film No.: 07774269
SIC: 6189 Asset-Backed Securities
Assistant Director 5

**<DOCUMENT>**
**<TYPE>EX-4**
**<SEQUENCE>3**
**<FILENAME>ms7898562-ex4.txt**

---

&lt;DESCRIPTION&gt;POOLING AND SERVICING AGREEMENT
&lt;TEXT&gt;

## EXHIBIT 4

**MORGAN STANLEY ABS CAPITAL I INC.,**
**Depositor,**

**WELLS FARGO BANK, NATIONAL ASSOCIATION,**
**Master Servicer, Securities Administrator and Servicer,**

**SAXON MORTGAGE SERVICES, INC.,**
**Servicer,**

**COUNTRYWIDE HOME LOANS SERVICING LP,**
**Servicer,**

**FIRST NLC FINANCIAL SERVICES, LLC,**
**Responsible Party,**

**and**

**DEUTSCHE BANK NATIONAL TRUST COMPANY,**
**Trustee**

----------------------

**POOLING AND SERVICING AGREEMENT**

**Dated as of March 1, 2007**

----------------------

**MORGAN STANLEY HOME EQUITY LOAN TRUST 2007-2**

**MORTGAGE PASS THROUGH CERTIFICATES,**
**SERIES 2007-2**

&lt;PAGE&gt;

## TABLE OF CONTENTS

ARTICLE I

DEFINITIONS

ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
REPRESENTATIONS AND WARRANTIES

Section 2.01   Conveyance of Mortgage Loans.................................

Section 2.02   Acceptance by the Trustee of the Mortgage Loans..............

Section 2.03   Representations and Warranties; Remedies for Breaches of
               Representations and Warranties with Respect to the
               Mortgage Loans...........................................

Section 2.04   Execution and Delivery of Certificates......................

Section 2.05   REMIC Matters..............................................

Section 2.06   Representations and Warranties of the Depositor.............

Section 2.07   Enforcement of Obligations for Breach of Mortgage Loan
               Representations...........................................

ARTICLE III

ADMINISTRATION AND SERVICING
OF MORTGAGE LOANS

Section 3.01   Servicers to Service Mortgage Loans.........................

Section 3.02   Subservicing Agreements between a Servicer and
               Subservicers..............................................

Section 3.03   Successor Subservicers.....................................

Section 3.04   Liability of the Servicers..................................

Section 3.05   No Contractual Relationship between Subservicers, the
               Master Servicer and the Trustee.............................

Section 3.06   Assumption or Termination of Subservicing Agreements by
               Master Servicer...........................................

Section 3.07   Collection of Certain Mortgage Loan Payments.................

Section 3.08   Subservicing Accounts......................................

Section 3.09   Collection of Taxes, Assessments and Similar Items;
               Escrow Accounts...........................................

Section 3.10   Collection Accounts........................................

Section 3.11   Withdrawals from the Collection Accounts....................

Section 3.12   Investment of Funds in the Collection Accounts and the
               Distribution Account.......................................

Section 3.13   Maintenance of Hazard Insurance and Errors and Omissions
               and Fidelity Coverage......................................

Section 3.14   Enforcement of "Due-on-Sale" Clauses; Assumption
               Agreements................................................

Section 3.15   Realization upon Defaulted Mortgage Loans...................

Section 3.16   Release of Mortgage Files...................................

Section 3.17   Title, Conservation and Disposition of REO Property..........

Section 3.18   Notification of Adjustments.................................

Section 3.19   Access to Certain Documentation and Information Regarding
               the Mortgage Loans.........................................

Section 3.20   Documents, Records and Funds in Possession of the
               Servicers to Be Held for the Trustee........................

Section 3.21   Servicing Compensation.......................................
Section 3.22   Annual Statement as to Compliance...........................
Section 3.23   Annual Reports on Assessment of Compliance with Servicing
               Criteria; Annual Independent Public Accountants'
               Attestation Report.........................................
Section 3.24   Master Servicer to Act as Servicer..........................
Section 3.25   Compensating Interest.......................................
Section 3.26   Credit Reporting; Gramm-Leach-Bliley Act....................
Section 3.27   Optional Purchase of Delinquent Mortgage Loans..............

## ARTICLE IV

## DISTRIBUTIONS AND
## ADVANCES BY THE SERVICERS

Section 4.01   Advances....................................................
Section 4.02   Priorities of Distribution..................................
Section 4.03   Monthly Statements to Certificateholders....................
Section 4.04   Certain Matters Relating to the Determination of LIBOR.......
Section 4.05   Allocation of Applied Realized Loss Amounts.................
Section 4.06   Swap Account................................................

## ARTICLE V

## THE CERTIFICATES

Section 5.01   The Certificates............................................
Section 5.02   Certificate Register; Registration of Transfer and
               Exchange of Certificates...................................
Section 5.03   Mutilated, Destroyed, Lost or Stolen Certificates...........
Section 5.04   Persons Deemed Owners.......................................
Section 5.05   Access to List of Certificateholders' Names and Addresses....
Section 5.06   Maintenance of Office or Agency.............................

## ARTICLE VI

## THE DEPOSITOR AND THE SERVICERS

Section 6.01   Respective Liabilities of the Depositor and the Servicers....
Section 6.02   Merger or Consolidation of the Depositor or a Servicer.......
Section 6.03   Limitation on Liability of the Depositor, the Servicers
               and Others.................................................
Section 6.04   Limitation on Resignation of a Servicer.....................
Section 6.05   Additional Indemnification by the Servicers; Third Party
               Claims.....................................................

## ARTICLE VII

## DEFAULT

Section 7.01   Events of Default...........................................
Section 7.02   Master Servicer to Act; Appointment of Successor.............
Section 7.03   Notification to Certificateholders...........................

## ARTICLE VIII

## CONCERNING THE TRUSTEE

Section 8.01   Duties of the Trustee......................................
Section 8.02   Certain Matters Affecting the Trustee......................
Section 8.03   Trustee Not Liable for Certificates or Mortgage Loans........
Section 8.04   Trustee May Own Certificates...............................
Section 8.05   Trustee's Fees and Expenses................................
Section 8.06   Eligibility Requirements for the Trustee...................
Section 8.07   Resignation and Removal of the Trustee.....................
Section 8.08   Successor Trustee..........................................
Section 8.09   Merger or Consolidation of the Trustee.....................
Section 8.10   Appointment of Co-Trustee or Separate Trustee...............
Section 8.11   Tax Matters................................................
Section 8.12   Periodic Filings...........................................
Section 8.13   Tax Treatment of Upper-Tier CarryForward Amounts, Basis
               Risk CarryForward Amounts and Class IO Shortfalls; Tax
               Classification of the Excess Reserve Fund Account, Swap
               Account and the Interest Rate Swap Agreement...............
Section 8.14   Custodial Responsibilities.................................

## ARTICLE IX

## ADMINISTRATION OF THE MORTGAGE LOANS BY THE MASTER SERVICER

Section 9.01   Duties of the Master Servicer; Enforcement of Servicer's
               Obligations................................................
Section 9.02   Maintenance of Fidelity Bond and Errors and Omissions
               Insurance..................................................
Section 9.03   Representations and Warranties of the Master Servicer........
Section 9.04   Master Servicer Events of Default...........................
Section 9.05   Waiver of Default..........................................
Section 9.06   Successor to the Master Servicer...........................
Section 9.07   Compensation of the Master Servicer........................
Section 9.08   Merger or Consolidation....................................
Section 9.09   Resignation of the Master Servicer.........................
Section 9.10   Assignment or Delegation of Duties by the Master Servicer....
Section 9.11   Limitation on Liability of the Master Servicer.............
Section 9.12   Indemnification; Third Party Claims........................

## ARTICLE X

## CONCERNING THE SECURITIES ADMINISTRATOR

Section 10.01   Duties of Securities Administrator...........................
Section 10.02   Certain Matters Affecting the Securities Administrator.......
Section 10.03   Securities Administrator Not Liable for Certificates or Mortgage Loans.............................................
Section 10.04   Securities Administrator May Own Certificates...............
Section 10.05   Securities Administrator's Fees and Expenses................
Section 10.06   Eligibility Requirements for Securities Administrator.......
Section 10.07   Resignation and Removal of Securities Administrator.........
Section 10.08   Successor Securities Administrator...........................
Section 10.09   Merger or Consolidation of Securities Administrator.........
Section 10.10   Assignment or Delegation of Duties by the Securities Administrator.............................................

## ARTICLE XI

## TERMINATION

Section 11.01   Termination upon Liquidation or Purchase of the Mortgage Loans......................................
Section 11.02   Final Distribution on the Certificates......................
Section 11.03   Additional Termination Requirements.........................

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

Section 12.01   Amendment.................................................
Section 12.02   Recordation of Agreement; Counterparts......................
Section 12.03   Governing Law..............................................
Section 12.04   Intention of Parties.........................................
Section 12.05   Notices.....................................................
Section 12.06   Severability of Provisions...................................
Section 12.07   Assignment; Sales; Advance Facilities........................
Section 12.08   Limitation on Rights of Certificateholders...................
Section 12.09   Inspection and Audit Rights..................................
Section 12.10   Certificates Nonassessable and Fully Paid...................
Section 12.11   Rule of Construction.........................................
Section 12.12   Waiver of Jury Trial.........................................
Section 12.13   Rights of the Third Parties..................................
Section 12.14   Regulation AB Compliance; Intent of the Parties; Reasonableness.............................................

SCHEDULES

Schedule I        Mortgage Loan Schedule

Schedule II       Representations and Warranties of Saxon Mortgage Services,
        Inc., as Servicer

Schedule II-A     Further Representations and Warranties of Saxon

Schedule III      Representations and Warranties of Morgan Stanley ABS
        Capital I Inc. as to the Mortgage Loans

Schedule IV       Representations and Warranties of First NLC as to the First
        NLC Mortgage Loans

Schedule V        Representations and Warranties of Wells Fargo Bank, National
        Association, as Servicer

Schedule VI       Representations and Warranties of Countrywide Home Loans
        Servicing LP, as Servicer


EXHIBITS

Exhibit A     Form of Class A, Class M and Class B Certificate

Exhibit B     Form of Class P Certificate

Exhibit C-1   Form of Class R Certificate

Exhibit C-2   Form of Class RX Certificate

Exhibit D     Form of Class X Certificate

Exhibit E     Form of Initial Certification of Trustee

Exhibit F     Form of Document Certification and Exception Report of Trustee

Exhibit G     Form of Residual Transfer Affidavit

Exhibit H     Form of Transferor Certificate

Exhibit I     Form of Rule 144A Letter

Exhibit J     Form of Request for Release

Exhibit K     Form of Contents for Each Mortgage File

Exhibit L     Form of Certification to be provided with Form 10-K