1  MARK JOSEPH KENNEY (State Bar No. 87345)
   mjk@severson.com
2  BRIAN S. WHITTEMORE (State Bar No. 241631)
   bsw@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  One Embarcadero Center, Suite 2600
   San Francisco, California 94111
5  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
6
   Attorneys for Defendants
7  BANK OF AMERICA, N.A.; RECONTRUST
   COMPANY, N.A.
8

9              UNITED STATES DISTRICT COURT

10    NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

11

12  RAHILA KHAN,                        Case No. CV-12-01107-LB

13            Plaintiff,                **REQUEST FOR JUDICIAL NOTICE IN
                                        SUPPORT OF MOTION TO DISMISS
14       vs.                            PLAINTIFF'S SECOND AMENDED
                                        COMPLAINT**
15  RECONTRUST COMPANY and BANK OF
    AMERICA, N.A., and DOES 1 through 10,   Date:    March 5, 2015
16                                          Time:    11:00 a.m.
            Defendants.                     Crtrm.:  C; 15th Floor
17                                          Judge:   Hon. Laurel Beeler

18                                          Trial Date:    None Set

19

20

21

22

23

24

25

26

27

28

1    In support of its motion to dismiss the Second Amended Complaint, Defendants BANK

2  OF AMERICA, N.A. and RECONTRUST COMPANY, N.A. ("Moving Defendants") hereby

3  request that the Court take judicial notice of the following documents pursuant to Federal Rule of

4  Evidence 201.

5    Under Rule 201, facts appropriate for judicial notice are those "not subject to reasonable

6  dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or

7  (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

8  reasonably be questioned." Fed. R. Evid. 201(b).  Facts subject to judicial notice may be

9  considered on a motion to dismiss under Rule 12(b)(6). *Mullis v. United States Bankruptcy Ct.*,

10  828 F.2d 1385, 1388 (9th Cir. 1987).

11    1.    The Deed of Trust ("DOT") recorded September 18, 2006, which was recorded

12  with the Alameda County Recorder's Office as Document No. 2006351807.  A true and correct

13  copy of this document is attached hereto as **Exhibit A**.

14    2.    The Assignment of Deed ("Assignment 1") recorded June 28, 2011, which was

15  recorded with the Alameda County Recorder's Office as Document No. 2011183101.  A true and

16  correct copy of this document is attached hereto as **Exhibit B.**

17    3.    The Notice of Default ("NOD") recorded September 21, 2011, which was recorded

18  with the Alameda County Recorder's Office as Document No. 2011268436.  A true and correct

19  copy of this document is attached hereto as **Exhibit C**.

20    4.    The Notice of Trustee Sale ("NOTS") recorded December 27, 2011, which was

21  recorded with the Alameda County Recorder's Office as Document No. 2011375533.  A true and

22  correct copy of this document is attached hereto as **Exhibit D**.

23    5.    The Assignment of Deed ("Assignment 2") recorded August 17, 2012, which was

24  recorded with the Alameda County Recorder's Office as Document No. 2012271539.  A true and

25  correct copy of this document is attached hereto as **Exhibit E.**

26    6.    The Substitution of Trustee ("NOD") recorded September 24, 2012, which was

27  recorded with the Alameda County Recorder Office as Document No. 2012311867.  A true and

28  correct copy of this document is attached hereto as **Exhibit F**.

70000.0669/3856085.1                                                          CV-12-01107-LB

1      7.     The Notice of Rescission ("NOR") recorded July 1, 2013, which was recorded with

2   the Alameda County Recorder's Office as Document No. 2013227770.  A true and correct copy of

3   this document is attached hereto as **Exhibit G**.

4      8.     The Joint Case Management Statement filed in the United States District Court for

5   the Northern District of California on December 4, 2014 as Document No. 83 on the docket.  A

6   true and correct copy of this document is attached hereto as **Exhibit H**.

7   DATED:  January 15, 2015          SEVERSON & WERSON
                                   A Professional Corporation

9                            By:       /s/ Brian S. Whittemore
                                      Brian S. Whittemore

10                       Attorneys for Defendants BANK OF AMERICA, N.A.;
                       RECONTRUST COMPANY, N.A.

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT



Severson
&Werson
A Professional Corporation

# EXHIBIT A

*Alliance Title*

*Escrow # 11484274-SU4 AV*

*IV*

Recording Requested By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
Return To:
**Accredited Home Lenders, Inc.**
**Attn: Post Closing Dept.**
**16550 West Bernardo Dr. Bldg 1**
**San Diego, CA 92127-1870**



2006351807　09/18/2006 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:　67.00

20　PGS

**RECORDING REQUESTED BY:**
**ALLIANCE TITLE COMPANY**

Prepared By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
**15090 Avenue of Science**
**San Diego, CA 92128**

AO²
ω
ι

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

MIN **100176106081079536**

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 1, 2006**
together with all Riders to this document.
(B) **"Borrower"** is **RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

Borrower's address is **4140 IRVINGTON AVENUE**
**FREMONT, CA 94538**                        . Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **Accredited Home Lenders, Inc.**
**A California Corporation**
Lender is a **Corporation**
organized and existing under the laws of **the State of California**

**0608107953**

**CALIFORNIA-**Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**    **Form 3005 1/01**

**-6A(CA)** (0207)

Page 1 of 15    Initials: *RK*

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
(D) "Trustee" is ALLIANCE TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated **September 1, 2006**
The Note states that Borrower owes Lender **four hundred sixty thousand and 00/100**

**Dollars**
(U.S. $ **460,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2036**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials _RK_

0608107953

VMP -6A(CA) (0207)

Page 2 of 15

Form 3005 1/01

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor In Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
**County**                  of                  **ALAMEDA**                  :
[Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

**See Legal Description Addendum Page Attached**

Parcel ID Number: **525-0835-029**                           which currently has the address of
**39959 MICHELLE STREET**                                                      [Street]
**FREMONT**                                             [City], California **94538**        [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

**0608107953**

-6A(CA) (0207)                              Page 3 of 15              Initials _RK_              Form 3005   1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

**0608107953**

Initials: _RC_

VMP -6A(CA) (0207)   Page 4 of 15   Form 3005   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(CA) (0207)

Page 8 of 16

Initials: BK

0608107953

Form 3005 1/01

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0608107953

Initials _RK_

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: 

0608107953

-6A(CA) (0207)

Page 12 of 15

Form 3005   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: RK

0608107953

-6A(CA) (0207)     Page 13 of 15     Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           RAHILA KAHN              -Borrower


                                          _____ (Seal)
                                                                    -Borrower


_____ (Seal)           _____ (Seal)
            -Borrower                                               -Borrower


_____ (Seal)           _____ (Seal)
            -Borrower                                               -Borrower


_____ (Seal)           _____ (Seal)
            -Borrower                                               -Borrower

State of California
County of ALAMEDA } ss.

On SEPTEMBER 5, 2006, before me, KIMBERLY HAGIN - notary public
personally appeared

**RAHILA KAHN**

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

KIMBERLY HAGIN (Seal)

KIMBERLY HAGIN
Comm. # 1679800
NOTARY PUBLIC · CALIFORNIA
Santa Clara County
My Comm. Expires July 6, 2010

Initials: RK

0608107953

·6A(CA) (0207)                    Page 15 of 15                    Form 3005   1/01

LEGAL DESCRIPTION ATTACHED AS EXHIBIT "A"

| Borrower Name(s):<br>RAHILA KAHN | Lender:<br>Accredited Home Lenders, Inc.<br>A California Corporation<br>15090 Avenue of Science<br>San Diego, CA 92128 |
|---|---|
| | Loan #: 0608107953 |

**Property Address:**
39959 MICHELLE STREET
FREMONT, CA 94538

**Legal Description:**

LOT 26, BLOCK 1, TRACT 1912, FILED AUGUST 20, 1958 IN BOOK 38 OF MAPS AT PAGE 97, ALAMEDA COUNTY RECORDS.

Initials R.K

11484274 -564 -AV

**Exhibit A**
**Legal Description**

All that certain real property in the City of Fremont, County of Alameda, State of California, described as follows:

Lot 26, Block 1, Tract 1912, filed August 20, 1958 in Book 38 of Maps at Page 97, Alameda County Records.

APN No: 525-0835-029

# ADJUSTABLE RATE RIDER

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **1st** day of **September , 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Accredited Home Lenders, Inc., A California Corporation** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**39959 MICHELLE STREET**
**FREMONT, CA 94538**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **8.400%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the **1st** day of **October, 2008** and on the **1st** day of every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MIN # 100176106081079536           KAHN         Initials: _____
ARMRIDR1.UFF                      Page 1 of 3      Loan # 0608107953
                                                    AHL modified FannieMae 3138 (1/01)

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five And Four Tenth(s)** percentage points (**5.400%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.900%** or less than **8.400%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage points ( **1.500%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.400%** or less than **8.400%**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MIN #  100176106081079536
ARMRIDR2.UFF

KAHN
Page 2 of 3

Initials:
Loan #    0608107953
AHL modified FannieMae 3138 (1/01)

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____  9/5/06
Borrower                        Date          _____
**RAHILA KAHN**                               Borrower                        Date


_____            _____
Borrower                        Date          Borrower                        Date


_____            _____
Borrower                        Date          Borrower                        Date


_____            _____
Borrower                        Date          Borrower                        Date


MIN #  100176106081079536          KAHN              Loan #     0608107953
ARMRIDR3.UFF                       Page 3 of 3        AHL modified FannieMae 3138 (1/01)



# EXHIBIT B

Recording Requested By:
**Bank of America**
Prepared By: **Barbara Nord**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID#   **2437398914995220**

Property Address:
**39959 Michelle St**
**Fremont, CA 94538-2915**
CA0-ADT 13909997                6/7/2011



**2011183101        06/28/2011 10:50 AM**
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:        24.00

3   PGS

This space for Recorder's use

MIN #: 100176106081079536                MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474** does hereby grant, sell, assign, transfer and convey unto **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF THE MORGAN STANLEY HOME EQUITY LOAN TRUST 2007-2, MORTGAGE PASS THROUGH  CERTIFICATES, SERIES 2007-2** whose address is **9062 OLD ANNAPOLISRD, COLUMBIA, MD 21045** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION** |
| Original Borrower(s): | **RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** |
| Original Trustee: | **ALLIANCE TITLE** |
| Date of Deed of Trust: | **9/1/2006** |
| Original Loan Amount: | **$460,000.00** |

Recorded in **Alameda County, CA** on: **9/18/2006**, book **N/A**, page **N/A** and instrument number **2006351807**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

*0609-11*

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By:

**Tina LeRaybaud, Assistant Secretary**

State of **California**
County of **Ventura**

On _____ before me, **Marcellus Ellis**, Notary Public, personally appeared **Tina LeRaybaud**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____

Notary Public: **Marcellus Ellis**                                    **(Seal)**
My Commission Expires: **10/31/2013**

*See attached*

## ACKNOWLEDGMENT

State of California
County of _____ Ventura _____ )

On *June 9, 2011* before me, Dee Ann Westfall Cortes, Notary Public
_____
(insert name and title of the officer)

personally appeared *Tina Je Rayband*
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

```
                                        DEE ANN WESTFALL CORTES
                                        Commission # 1805013
                                        Notary Public - California
                                        Los Angeles County
                                        My Comm. Expires Jul 1, 2012
```

Signature *Deann Westfall Cortes* (Seal)

*assignment of Deed of Trust to Rahila Kahn*



# EXHIBIT C

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Sheryl Dela Cruz
TS No. 11-0099855
Title Order No. 11-0081134



2011268436       09/21/2011 11:46 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:        27.00

4    PGS



SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $151,302.53, as of 09/20/2011 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

see Attached Declaration

TS No. 11-0099855

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR  THE HOLDERS OF THE MORGAN STANLEY HOME EQUITY LOAN TRUST 2007-2, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-2
C/O Bank of America, N.A.
400 National way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 09/01/2006, executed by RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 09/18/2006, as Instrument No. 2006351807 (or Book , Page ) of Official Records in the Office of the County Recorder of Alameda County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 460,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST  WHICH BECAME DUE ON 01/01/2009  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES.  IN ADDITION,  THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  10/01/2036 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No. 11-0099855

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured  thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable  and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: September 20, 2011

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

_____
Authorized Signer

ARAYA DHANASOPON

*Form nodorig_2011.3.0_03/2011*

**Bank of America**

**Home Loans**

**Notice Date:**   September 13, 2011

11-0099855

Rahila Kahn
40224 Blanchard St
Fremont, CA  94538

**Property Address:**
39959 Michelle Street
Fremont, CA  94538

## CALIFORNIA DECLARATION

I, _Chambiri Miller_, Mortgage Servicing Specialist II of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America, N.A.

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

_9-13-11 (Richardson, TX_
Date and Place

Name of Signor

_Chambiri Miller_

CA-DECLARATIONS  8638/9606  8/27/2008



# EXHIBIT D



RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 11-0099855
Title Order No. 11-0081134

LANDSAFE TITLE



2011375533    12/27/2011 11:20 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:          18.00

1    PG

---

APN No. 525-0835-029

## NOTICE OF TRUSTEE'S SALE

## YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/01/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, dated 09/01/2006 and recorded 09/18/2006, as Instrument No. 2006351807, in Book , Page of Official Records in the office of the County Recorder of ALAMEDA County, State of California, will sell on 01/17/2012 at 12:30 PM, At the Fallon Street entrance to the County Courthouse, 1225 Fallon Street, Oakland, CA 94612

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 39959 MICHELLE STREET, FREMONT, CA 94538. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $605,814.22. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust with interest thereon, as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information (800) 281-8219

DEC 2 2 2011

By:
Joselyn Casillas, Asst Vice President

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

Form nos_2011.11.0_11/2011



# EXHIBIT E

Recording Requested By:
**Bank of America**
Prepared By:  **Diana De Avila**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**450 E. Boundary Rd.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID#   **3937398915718378**
Property Address:
**39959 Michelle St**
**Fremont, CA 94538-2915**
CA0-ADT  19090853   7/6/2012



2012271539      08/17/2012 03:41 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:         21.00

2      PGS

This space for Recorder's use

MIN #: 100176106081079544          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF THE MORGAN STANLEY HOME EQUITY LOAN TRUST 2007-2, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-2** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:              **ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION**
Original Borrower(s):        **RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Original Trustee:            **ALLIANCE TITLE**
Date of Deed of Trust:       9/1/2006
Original Loan Amount:        **$115,000.00**

Recorded in **Alameda County, CA** on: 9/18/2006, book **N/A**, page **N/A** and instrument number **2006351808**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**JUL 1 2 2012**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
**Talisha    Wallace Assistant Secretary**

State of **California**
County of **Ventura**

On __JUL 1 2 2012__ before me, _____ Danya Bucaro _____, Notary Public, personally appeared
_____ Talisha Wallace _____
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

> DANYA BUCARO
> Commission # 1880386
> Notary Public - California
> Los Angeles County
> My Comm. Expires Mar 15, 2014

Notary Public: _____ Danya Bucaro _____          (Seal)
My Commission Expires: March 15, 2014



# EXHIBIT F

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

ATTN: DIEGO BERUMEN
TS No. 11-0099855

11-0081134                              H

COUNTY OF ALAMEDA CALIFORNIA

2012311867     09/24/2012 11:56 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:          18.00

1    PG

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, ALLIANCE TITLE was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 09/01/2006 recorded on 09/18/2006 as Instrument No. 2006351807 in Book  Page  of Official Records of  Alameda County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes  RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY,  CA  93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:September 20, 2012

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF THE MORGAN STANLEY HOME EQUITY LOAN TRUST 2007-2, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-2 BY ITS AIF BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP

BY: _____  9-20-12
MARIA E. CASTRO, ASSISTANT VICE PRESIDENT

State of:     CALIFORNIA          )
County of:   VENTURA             )

On SEP 20 2012 before me, __Tracey A. Dominique_____, notary public, personally appeared
   MARIA E. CASTRO_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Tracey A. Dominique_____ (Seal)
          **Tracey A. Dominique**

TRACEY A. DOMINIQUE
Commission # 1859141
Notary Public - California
Los Angeles County
My Comm. Expires Aug 19, 2013

*Form sub_2011.11.0_11/2011*



# EXHIBIT G

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063    And

WHEN RECORDED MAIL TO:
RAHILA KAHN
39959 MICHELLE STREET
FREMONT, CA 94538

TS No. 11-0099855

Title Order No. 11-0081134



2013227770    07/01/2013 11:09 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    25.00

1    PG

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF RESCISSION OF DECLARATION OF DEFAULT
## AND DEMAND FOR SALE AND OF NOTICE OF DEFAULT AND ELECTION TO SELL

NOTICE IS HEREBY GIVEN:  That RECONTRUST COMPANY,  N.A., is acting as Trustee for the Beneficiary under a DEED OF TRUST dated 09/01/2006, executed by RAHILA KAHN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, recorded 09/18/2006 as Instrument No. 2006351807 in Book N/A, Page N/A, of Official Records in the Office of the Recorder of Alameda County, California describing land therein as more fully described on the above referenced deed of trust.

Said obligations including one note for the sum of $460,000.00.

Whereas, the current beneficiary under that certain Deed of Trust hereinabove described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas notice was heretofore given of the breach of obligations for which said Deed of Trust is security, and of election to cause to be sold the property therein described; and Whereas a Notice of Default and Election to Sell was recorded on 09/21/2011 in the office of the Recorder of Alameda County, California, Instrument No. 2011-268436, in Book N/A, Page N/A, of Official Records.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that the current Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Default and Election to Sell; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default--past, present or future--under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Demand for Sale and Notice of Default and Election to Sell had not been made and given.

RECONTRUST COMPANY, N.A., AS TRUSTEE FOR THE BENEFICIARY

JUN 2 7 2013

Dated: June 27, 2013                    By: _____

Juan Rodriguez    Assistant Vice President

CARESCIND_2013.06.EP_06/2013



# EXHIBIT H

1   MARK JOSEPH KENNEY (State Bar No. 87345)
    mjk@severson.com
2   BRIAN S. WHITTEMORE (State Bar No. 241631)
    bsw@severson.com
3   SEVERSON & WERSON
    A Professional Corporation
4   One Embarcadero Center, Suite 2600
    San Francisco, California 94111
5   Telephone: (415) 398-3344
    Facsimile: (415) 956-0439
6
7   Attorneys for Defendants
8   BANK OF AMERICA, N.A.; RECONTRUST
    COMPANY, N.A.
9
10
    RAHILA KHAN, *Pro Se*
11
12                  UNITED STATES DISTRICT COURT
13      NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION
14
15   RAHILA KHAN,                          | Case No. CV-12-01107-LB
16             Plaintiff,                   | **JOINT CASE MANAGEMENT
                                            | STATEMENT**
17        vs.
                                            | Date:    December 4, 2014
18   RECONTRUST COMPANY and BANK OF         | Time:    11:00 a.m.
     AMERICA, N.A., and DOES 1 through 10,  | Crtrm.:  C, 15th Floor
19                                          | Judge:   Hon. Laurel Beeler
20             Defendants.
21                                          | Trial Date:    None Set

22        Plaintiff Rahila Khan and Defendants Recontrust Company, N.A. and Bank of America,

23   N.A. ("Defendants") file this Joint Case Management Statement pursuant to the Standing Order of

24   the Northern District of California and this Court's Order.

25        1.    Jurisdiction and Service:

26        Ms. Khan filed the initial Complaint on March 6, 2012 alleging Violation of TILA,

27   RESPA, Fraud and Violation of California's Civil Code section 2923.5.  Ms. Khan alleged subject

28   matter jurisdiction arising out of her federal statutory claims.

1    Defendants were served on March 12, 2012.

2         2.    Facts:

3    Allegations are based on Ms. Khan's First Amended Complaint ("FAC"). *See* Dkt. 22.

4         This litigation arises out of a residential property loan obtained by Ms. Khan from

5    Accredited Home Lenders, Inc. on September 18, 2006. After experiencing financial difficulties

6    in 2009, Ms. Khan discussed the possibility of a loan modification with defendant Bank of

7    America and, in fact, alleges that she received a permanent modification from Bank of America in

8    January 2010. As alleged, Ms. Khan began making payments of $2017.00 and after a period of

9    time the bank stopped accepting payments.

10        Ms. Khan filed the lawsuit because Defendants have not implemented a permanent

11   modification although she submitted documentation in support of a modification. Ms. Khan has

12   engaged the bank on several occasions as to her desire to obtain a modification. In 2009, the FAC

13   alleges that Bank of America denied receipt of Plaintiff's proof of income and cancelled the loan

14   modification.

15        In January 2010, Ms. Khan alleges that the bank again modified her loan and that she made

16   payments on February 4, 2010 of $2,669.17 and March 4, 2010 of $2074.13. Ms. Khan alleges

17   that the bank requested she make the payments as a demonstration of good faith as part of a "trial

18   modification" and Ms. Khan agreed to make the payments with the understanding that the

19   trustee's sale would not go forward.

20        Ms. Khan again attempted to modify the loan on or about April 2010 and supplied

21   additional information to a bank representative. However, she ultimately received a Notice of

22   Default. The surviving claim for fraud is premised on the allegation that Bank of America made

23   false statements with regard to Ms. Khan's modification attempts, including: (1) a representation

24   that Ms. Khan did not provide required documents; and (2) that Ms. Khan was denied a

25   modification due to negative NPV or Net Present Value. Plaintiff alleges that she relied on the

26   oral and written representations of Bank of America's Forbearance Agreement that no foreclosure

27   would take place during the loan modification and forbearance process and, as a result, did not

28   pursue other options.

1      **Ms. Khan filed a motion for leave to file a second complaint that was granted in part**

2 **and denied in part.**

3      **Ms. Khan was allowed leave to add SPS as a defendant. Defendants is not aware that**

4 **Ms. Khan has either filed a copy of the SAC or served the new defendant SPS.**

5      3.   <u>Legal Issues:</u>

6      After two successive motions to dismiss, only Ms. Khan's claim for Fraud survives. The

7 surviving claim for fraud is premised on the allegation that Bank of America made false

8 statements with regard to Ms. Khan's modification attempts, including: (1) a representation that

9 Ms. Khan did not provide required documents; and (2) that Ms. Khan was denied a modification

10 due to negative NPV or Net Present Value. Ms. Khan alleges that she relied on the oral and

11 written representations of Bank of America's Forbearance Agreement that no foreclosure would

12 take place during the loan modification and forbearance process and, as a result, did not pursue

13 other options.

14      **Defendant will evaluate the SAC once filed.**

15      4.   <u>Motions:</u>

16      There are no motions currently pending **but the case is not yet at issue as Defendant**

17 **anticipates that Plaintiff will file a SAC and add a new party to the case.**. Defendants

18 anticipate filing a motion for summary judgment.

19      5.   <u>Amendment of Pleadings:</u>

20      It is **anticipated that Plaintiff will file a SAC and add a new defendant SPS.**

21      6.   <u>Evidence Preservation:</u>

22      Plaintiff and Defendants believe that the primary documentary evidence in this matter will

23 be public records, such as deeds of trust, contracts signed by the parties, and the loan file

24 associated with the September 1, 2006 residential property loan. These documents will either be

25 preserved (such as the loan file and loan contracts) or do not require any specific preservation

26 steps (such as the public documents).

27      7.   <u>Disclosures:</u>

28      Initial Disclosures have not yet been completed. This is due to the fact that the case was

1   referred to the Court's ADR department. The ADR office had the parties agree to an effective stay

2   of this litigation while the parties were actively engaged in a workout review. The ADR officer

3   schedules regular conference calls with the parties to monitor progress.

4       **The parties have not yet engaged in discovery pending the outcome of the motion for**

5   **leave to amend and the filing of the SAC.**

6       8.    Discovery:

7       No discovery has been initiated or propounded by either side, in part, due to the ongoing

8   ADR efforts previously described. The parties do not believe that the discovery rules need to be

9   limited or modified in this action. The parties anticipate that discovery will be relatively limited in

10  scope and manner.

11      The parties anticipate that there will be written discovery, which will likely include

12  Requests for Admission, Interrogatories, and Requests for Production of Documents.  Defendant

13  also intends to depose witnesses including, at minimum, Plaintiff and her husband.

14      The parties are continuing their ongoing investigation of this matter, and reserves the right

15  to conduct different or additional discovery, including designation of experts, upon the discovery

16  of new information or upon the introduction of new issues in the case.

17      9.    Class Actions:

18      This is not a class action.

19      10.    Related Cases:

20      The parties do not believe that there are any cases related to this action.

21      11.    Relief:

22      The first amended complaint seeks statutory damages, a declaration of rights and duties,

23  specifically that the foreclosure of Plaintiff's residence was wrongful, for compensatory, special,

24  general and punitive damages according to proof.

25      The first amended complaint also seeks civil penalties pursuant to statute. However, the

26  statutory claims have been dismissed.

27      12.    Settlement and ADR:

28      The parties held a a meditation held a mediation with Howard Herman on July 24, 2014.

1  The case did not settle.

2      13.   Consent to Magistrate Judge for All Purposes:

3      Both parties have consented to the jurisdiction of a Magistrate Judge for all purposes.

4

5      14.   Other References:

6      This case is not suitable for reference at this time.

7      15.   Narrowing of Issues:

8      Prior motions to dismiss have significantly narrowed the issues in this action.  The primary

9  issue remaining in this case is whether Plaintiff can prove there was any fraudulent conduct on the

10 part of defendants with respect to her request for a loan modification.

11     The parties anticipate that resolution of motions may narrow the issues for determination.

12     16.   Expedited Trial Procedure:

13     The parties do not believe that this case can be handled on an expedited basis.

14     17.   Scheduling:

15     **The Court previously issued a Case Management PreTrial Order on August 29, 2014,**

16 **prior to the filing of Plaintiff's Motion for Leave to Amend the Complaint.  Defendant**

17 **requests that the Court evaluate whether the deadlines are appropriate in light of the fact**

18 **that the case is not yet at issue and because it is anticipated that a new defendant will be**

19 **added.**

| | |
|---|---|
| **Updated Joiint CMC Statement** | **12/4/2014** |
| **Further Case Management Conference** | **12/11/2014 at 11:00 a.m.** |
| **ADR completion date** | **11/4/2014** |
| **Non-expert discovery completion date** | **3/23/2015** |
| **Expert disclosures** | **3/23/2015** |
| **Rebuttal Expert Disclosures** | **4/6/2015** |
| **Expert Discovery completion date** | **5/8/2015** |
| **Last hearing date for dispositive motions** | |
| **and further case management conference** | **6/18/2015 at 9:30 a.m.** |

| | |
|---|---|
| **Meet and confer re pretrial filings** | **6/30/2015** |
| **Pretrial filings due** | **7/9/2015** |
| **Oppositions, Objections, Exhibits and Depo** | |
| **Designations due** | **7/16/2015** |
| **Final Pretrial Conference** | **7/30/2015 at 1:30 p.m.** |
| **Trial** | **8/10/2015 at 8:30 a.m.** |

18.   <u>Trial:</u>

**A trial is currently set for August 10, 2015 at 8:30 a.m.**

19.   <u>Disclosure of Non-party Interested Entities or Persons:</u>

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Plaintiff discloses the following persons or entities:

1.   None.

Defendant discloses the following persons or entities:

1.   Deutsche Bank National Trust Company, as trustee for the Holders of the Morgan Stanley Home Equity Loan Trust 2007-2, Mortgage Pass Through Certificates, Series 2007-2.

20.   <u>Other Matters:</u>

Bank of America previously offered Ms. Khan a loan modification which she accepted. Defendant's counsel was advised on October 2, 2013 that SPS has approved a trial period plan for Plaintiff's second lien.  Ms. Khan has also accepted a loan modification from SPS.

DATED:  December 4, 2014          SEVERSON & WERSON, A Professional Corporation

By: _____ /s/ Brian S. Whittemore _____
                    Brian S. Whittemore
Attorneys for Defendants
BANK OF AMERICA, N.A.; RECONTRUST
COMPANY, N.A.

Rahila Khan
Rahilakhanone@hotmail.com
40224 Blanchard st
Fremont, California 94538
(510) 938-0837

MARK JOSEPH KENNEY (State Bar No. 87345)
mjk@severson.com
BRIAN S. WHITTEMORE (State Bar No. 241631)
bsw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHILA KHAN,<br><br>      Plaintiff,<br><br>  vs.<br><br>RECONTRUST COMPANY and BANK OF AMERICA, N.A., ,<br><br>      Defendants. | Case No. CV-12-01107-LB<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:    December 4, 2014<br>Time:    11:00 a.m.<br>Crtrm.:  C, 15th Floor<br>Judge:  Hon. Laurel Beeler<br><br>Trial Date:    None Set |

2. Facts: Mrs. Khan borrowed the loan in September of 2006 from accredited home lenders was based on principal and interest then the loan had transferred to countrywide and Bank of America.

In 2009 Mrs. Khan found out that her loan was a balloon loan whenever Mrs. Khan contacted the bank for a loan updated she would always get a response that the loan is not updated in there system that is why the bank is unable to provide interest or principal information.

After 2008-09 financial crisis BOA took over this loan from countrywide BOA changed the loan terms and conditions without Mrs. Khans approval all the money Mrs. Khan paid from 2006-2009 was lost BOA made a loan adjustable which changed the monthly payment every month.

Which left no choice to Mrs. Khan to file modification in 2009 it took 5 years from 2009 to 2013 to modify the loan meanwhile BOA refused to accept the monthly payments and BOA add all these payments in principal amount BOA advice Mrs. Khan only way she can get a better deal if she move in to her property and apply for HAMP loan Mrs. Khan followed the banks instruction and applied for HAMP loan in resulted BOA gave temporary Balloon loan and outrageous modification in 2010 BOA President  explain Mrs. Khan that she accept this offer and in two years she can remodfiy and BOA will NOT  modify her second loan until she modify her first loan.

Mrs. Khan signed the modification and sent to BOA. BOA accepted the  modification and start receiving payments in February 2010 and march 2010 then without any explanation BOA canceled the modification when Mrs. Khan contacted BOA then BOA President said we need our property back but in the congress office he said the reason we canceled the modification is that Mrs. Khan never provided any of the required document but Mrs. Khan has proof that BOA received all documents and had accepted the modification.

During the modification process the put a default notices and put the house up for sale at alameda county auction and started to deal with Mrs. Khan's clients directly and offered them cash to move out.

BOA purposely delayed modification from 2009-2013 and put foreclosure in her credit which will stay for number of years and Mrs. Khan will suffer for years to come because for these delays Mrs. Khan's second loan got messed up BOA gave modification way more than the house value during the modification processes BOA puts the house for sale and file foreclosure in Mrs. Khans credit. Mrs. Khan never got HAMP loan on any loan BOA purples push Mrs. Khan in that situation she lose her property her retirement her savings her credit and file bankruptcy

3. Motions:
   There are no motions in pending.

4. Amendment of Pleadings:
   BOA gave temporary and incomplete modification and changed servicer right way which is SPS (Select Portfolio Servicing Inc) then BOA hide from the picture whenever sps make any changes in the loan or payment there point is that BOA never transferred all information regarding this loan they have to consult with BOA before they give me any answer so it would be much better to bring both parties in the case.

5. Discovery:
   Plaintiff believed the discovery rule needs to be unlimited or modified in this action both parties anticipate that discovery supposed to be unlimited from both sides written telephone records all voice recorded conversation witness and documents which is related to this case plaintiff also intended to depose BOA President senior vice President and vice President who was involved from 2009 to 2013 in this modification process. I would like to open a Discovery in January of 2015

7. Relief:

   Boa lost the rights to seek relief for any kind of damage because it is very obvious that BOA purposely delayed the modification for 5 years to put Mrs. Khan in this situation.

8. Other matters:
   The Second Amended Filed was filed on December 4, 2014 at 11:44 am IN THE UNITED STATES DISTRICT COURT  NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

**PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

On December 4, 2014, I served true copies of the following document(s):

on the interested parties in this action as follows:

Rahila Khan                                    Plaintiff Pro Per
40224 Blanchard Street                         Telephone:  (510) 938-0837
Fremont, CA 94538

**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Severson & Werson's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 4, 2014, at San Francisco, California.

Chilaren L. Kada